IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PANTHER MOUNTAIN LODGE, INC., | : : : | Civil Action No. 3:08-CV-755 |
| Plaintiff | : : | (Judge Munley) |
| v. | : : | (Magistrate Judge Carlson) |
| WAYMART WINDFARM, L.P., | : : : | |
| Defendant | : | |

# REPORT AND RECOMMENDATION

## I.  INTRODUCTION

Panther Mountain Lodge, Inc. ("Panther Mountain" or "Plaintiff"), commenced this action on March 14, 2008, by filing a complaint in the Court of Common Pleas of Lackawanna County seeking recovery of rental payments claimed to be due under an easement agreement, which allowed Waymart Windfarm, L.P. ("Waymart") to use the land for a wind energy project.  Waymart subsequently removed the action to this Court on the basis of diversity, answered the complaint, and asserted counterclaims against Plaintiff.  Now pending before the Court is Waymart's Motion for Summary Judgment.  (Doc. 56.)  The course of dealings between the parties and other pertinent facts are summarized below.  For the reasons that follow, it is recommended that

Defendant's motion be granted with respect to Panther Mountain's claim, and denied with respect to its counterclaim for attorneys' fees.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

This dispute centers around Defendant's use of a parcel of land in Clinton Township, Wayne County, Pennsylvania (the "Property"). Plaintiff became the fee simple owner of the Property after executing an option agreement to purchase the Property from Defendant. On or about October 28, 2004, Plaintiff and Defendant entered into an easement agreement granting Defendant the right to engage in certain wind farming ventures on the Property. (Am. Compl. ¶ 6.) Included in this agreement were the rights to locate and operate wind turbines and to construct an operations and maintenance building (the "O&M Building") on the Property. Although Waymart was clearly granted the right to construct the O&M Building, Plaintiff contends that Defendant does not have the right to occupy and use the O&M Building. (Am. Compl. ¶ 8.) Pursuant to the easement agreement, Defendant was to

---

[1] The facts recited in this report are taken from the allegations in Plaintiff's Amended Complaint, and also from Defendant's Statement of Material Facts to the extent that such facts are not properly disputed in Plaintiff's responsive brief. Of note is the fact that much of Defendant's Statement of Material Facts consists of references to signed and executed agreements between the parties to which Plaintiff repeatedly refers and cites. As such, many references to the Statement of Material Facts are generally the facts pleaded or documents referenced by Plaintiff.

2

pay Plaintiff rent in the amount of $7,800, which Plaintiff contends represents only the fair rental value for stationing the wind turbines on the Property, and does not include the fair rental value for using the O&M Building. Plaintiff claims that the fair rental value for the O&M Building is $4,500 per month, and demands relief in the amount of $220,500 for past due rent, and $4,500 per month going forward from December 2008.

Plaintiff further alleges that Defendant has used the Property contrary to the terms of the easement agreement in several ways. Plaintiff alleges that Defendant may be using the O&M Building as its corporate headquarters in violation of the easement agreement. (Am. Compl. ¶ 11.) Plaintiff further alleges that several of Defendant's employees meet and park their vehicles near the O&M Building, also an alleged violation of the easement agreement. (Id.) Plaintiff also alleges that the employees working at the Property and others whom Defendant has permitted on the Property have impermissibly increased the use of water on the Property. (Id. ¶ 13.) In terms of relief sought, Plaintiff has limited its claim to the "fair rental value of the [O&M] Building and the appurtenant land." (Id. ¶10.)

Following the close of pleadings and a contested discovery period, Defendant moved for summary judgment. The motion has been fully briefed and is ripe for disposition. On May 28, 2010, the Court convened a conference with the parties to

address issues raised in the motion and the parties' competing briefs on May 28, 2010. Immediately prior to this conference, Plaintiff filed an untimely and unauthorized document labeled "Reply to Defendant's Supplemental Motion for Summary Judgment," to which Defendant was given leave to respond. Defendant filed its response on June 16, 2010.

### III. STANDARD OF REVIEW

Waymart has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## IV. DISCUSSION

### A. Plaintiff's Breach of Contract Claim

The disposition of this claim hinges on the interpretation of the easement agreement. Since this Court sits in diversity jurisdiction, we apply the substantive law of the state in which the dispute occurred. Norfolk Southern Ry. Co. v. Basell USA, Inc., 512 F.3d 86, 91 (3d Cir. 2008) (quoting Robertson v. Allied Signal, 914 F.2d 360, 378 (3d Cir. 1990)). Further, both the easement agreement and the fee agreement contain choice of law provisions that provide that any disputes arising out of them shall be governed by Pennsylvania law. Accordingly, this Court must decide this claim as we predict that the Pennsylvania Supreme Court would decide the case. Norfolk Southern, 512 F.3d at 91-92.

The law governing the interpretation of contracts under Pennsylvania law is familiar and well-settled. "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). A contract is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). Under Pennsylvania law, ambiguous contracts are interpreted by the

trier of fact, and unambiguous contracts are interpreted by the court as a matter of law. Mellon Bank, 619 F.2d at 1011 n.10.

The United States Court of Appeals for the Third Circuit has recently had occasion to summarize Pennsylvania law regarding the interpretation of contractual language and terms:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone. ***Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties.*** A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (internal citation omitted) (citing Murphy v. Duquesne Univ., 777 A.2d 418, 429-30 (Pa. 2001)) (emphasis added). Furthermore, it is hornbook law that courts must, whenever possible, read contract provisions so as to avoid ambiguity. Id. at 247. Where a

7

contract is not ambiguous, but is instead subject to only one reasonable interpretation, it is appropriate for a district court to resolve the issue of interpretation on summary judgment. See Norfolk S. Ry. v. Reading Blue Mountain & N. Ry., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004) ("A court may grant summary judgment on the interpretation of a contract when the contract is susceptible to only one reasonable interpretation . . . When the terms of the contract are unambiguous, the express language of the agreement controls its meaning.").

As noted above, Plaintiff is exclusively claiming rents due for what it contends is Waymart's unauthorized use of the O&M Building and appurtenant land. Essentially, Panther Mountain alleges that Waymart has exceeded its authorized use of the Property as granted by the easement agreement, and demands additional rent for past and future use of the O&M Building. (Am. Compl. ¶¶ 14, 16.) In response, Waymart maintains that the unambiguous language of the easement agreement allows for use of the O&M Building and further argues that Panther Mountain has offered no evidence to support its unreasonable interpretation of the contract's language. (SMF ¶¶ 11, 13, 26-29). Upon consideration of the facts and law as described below, we agree.

If we are to follow Plaintiff's interpretation of the easement agreement, we would read the scope of the document in such a way that would allow Waymart's

8

erection of the O&M Building, but prohibit any use or operation of the building. (Am. Compl. ¶ 8). Section 2 ("Scope") of the easement agreement states in relevant parts:

> The Wind Easement is for wind energy conversion to electricity, for the collection and transmission of electric power by developing one or more wind powered electricity generating projects, and for related activities (the "Development Activities") including, but not by way of limitation: . . . (b) constructing, installing, using, replacing, relocating and removing from time to time, and maintaining and operating wind turbines . . . control buildings, maintenance yards, and related facilities and equipment . . . (c) undertaking any other activities . . . that [Waymart] reasonably determines are necessary, useful, or appropriate to accomplish any of the foregoing . . .

Def. Statement of Material Facts ¶ 12 (hereinafter "SMF ¶ __"); Am. Compl. Ex. C at 2.

When read so as to avoid ambiguity, Section 2 of the easement agreement expressly grants Waymart the right to develop wind powered electricity generating projects and to conduct "Development Activities" including, but not limited to "using . . . maintaining and operating wind turbines . . . control buildings, maintenance yards, and related facilities and equipment." (SMF ¶ 12; Answer Ex. C.) This contractual language, when subjected to any reasonable interpretation, embraces Waymart's construction, use, and maintenance of the O&M Building, and Panther Mountain has

9

offered nothing by way of evidence or compelling argument to persuade the Court to find otherwise.

Furthermore, in order to survive a motion for summary judgment based on an asserted ambiguity in contractual language, a party must advance an alternative meaning of the contract language that is commercially reasonable. See County of Mercer v. Unilect Corp., 612 F.Supp.2d 638, 649 (W.D. Pa 2009). Merely arguing different interpretations of an agreement does not, without more, create a contractual ambiguity sufficient to rise to the level of an issue of material fact. Id. In addition to ignoring the terms of the contract that the parties actually negotiated, and arguing in vain that the language used was ambiguous, Panther Mountain advances a commercially unreasonable interpretation of the easement agreement by asserting that the agreement allows for the placement of the O&M Building on the Property but forbids any actual use of the building. Waymart's interpretation of the easement agreement, allowing for placement and use of the O&M Building, is commercially reasonable – and comports with the language chosen by the parties, which expressly contemplates Waymart "using . . . maintaining and operating wind turbines . . . control buildings, maintenance yards, and related facilities and equipment." (SMF ¶ 12; Answer Ex. C.) This Court struggles to find any language in the easement agreement or commercially reasonable interpretation of the easement agreement that

would permit Waymart to construct the O&M Building, but be required to let it sit on the property without being permitted to use, operate, and maintain the building. And, as we have noted above, the language of the easement agreement offers no support for Panther Mountain's argument; indeed, it flatly undermines Panther Mountain's position.

As stressed by Defendant, the easement agreement was entered into in an arm's length transaction with both sides represented by counsel of their choosing, the language of the contract is unambiguous, and the language clearly grants Waymart the right to use and operate the control building on the Property. Defendant has shown sufficient facts to support a summary judgment motion, so the burden then falls on Plaintiff to dispute these factual assertions by identifying disputed issues of fact in the record with evidence. <u>Berckeley</u>, 455 F.3d at 201. Plaintiff has been given ample opportunity to identify or rebut Defendant's assertions of fact and law and has failed to do so. In its reply (Doc. 64) and its supporting brief (Doc. 65), totaling six pages combined, Plaintiff fails to identify any substantive evidence to rebut any of Defendant's assertions. (Pl. Br. In Opp'n to Def. Mot. For Summ. J. at 2.) Instead, Defendant simply reasserts the same allegations set forth in its amended complaint without identifying any support from either the record or the law. This showing is clearly inadequate.

In sum, in this case a fair and commercially reasonable reading of the plain language of the easement agreement admits of a single, simple interpretation. In return for the rental payments prescribed by the agreement, that agreement expressly contemplates Waymart "using . . . maintaining and operating . . . control buildings, maintenance yards, and related facilities and equipment [as part of this wind farm operation]." (SMF ¶ 12; Answer Ex. C.) Using, maintaining and operating a control building and related facilities certainly permits human presence at the buildings, use of water and electric power at the buildings, and the parking of cars at the buildings so that people may come and go while they are "using . . . maintaining and operating . . . control buildings." Therefore, Panther Mountain cannot be heard to complain that these activities violate the contract, or compel the payment of an additional $220,000 in rent beyond the rent contractually agreed-to by the parties, the only relief sought by the Plaintiff in this case.

Thus, the Plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [its] case" and has failed to rebut the motion with facts outside the pleadings. Celotex, 477 U.S. at 322; Berckeley, 455 F.3d at 201. Neither party has identified any disputed issues of material fact and we find that Defendant is entitled to judgment as a matter of law with regard to the breach of

contract claim.² Accordingly, for the foregoing reasons, we will recommend that the Court grant Defendant's motion with respect to the breach of contract claim.

## B. Defendant's Counterclaim for Attorneys' Fees

In contrast to Waymart's claims on the merits of this easement contract dispute, which can be resolved through a reading of the unambiguous language of the easement agreement, Waymart's request for attorney's fees is not derived from the plain language of this easement agreement. Instead, Waymart's request for attorney's fees invites us to look beyond this contract to other dealings between the parties. In response to Panther Mountain's claims, Waymart has counterclaimed for attorneys' fees and costs. Waymart asserts this claim, not on the basis of the easement

---

² In its "Reply to Defendant's Supplemental Motion for Summary Judgment," (Doc. 69), Plaintiff appears to be attempting to demonstrate the existence of one or more disputes of material fact by citing to deposition testimony given by two of Panther Mountain's three shareholders, James Tornton and Martin Parise. We have reviewed the cited deposition testimony, and conclude that it has no bearing on the disposition of the pending motion or this action. As noted, Plaintiff has limited its claims to what it contends is the fair rental value of the O&M Building. Plaintiff's "Reply" does nothing to identify a relevant disputed issue of material fact with respect to this claim. Instead, Plaintiff cites to the deposition testimony of Messrs. Thornton and Parise in an apparent effort to demonstrate other breaches of the easement agreement. But because Plaintiff has not sought relief for any of these alleged breaches in this case, it is unclear how the testimony could have any relevance to the limited claims for rent actually made in this suit. The factual issues that Plaintiff purports to raise in its "Reply" are simply not material to the claims and defenses actually at issue in this litigation, and therefore they are neither relevant to the pending motion, nor sufficient to preclude the entry of summary judgment in Defendant's favor.

agreement, but rather based on Article X, Paragraph G of a separate option agreement, which states that the prevailing party in any action arising out of the option agreement shall be entitled to reasonable attorneys' fees and costs and expenses of investigation. (SMF ¶ 58; Def. Answer Ex. A, Art. X, ¶ G). Again, sitting in diversity jurisdiction, this Court must apply Pennsylvania law to determine the validity of an award of attorneys' fees.

Pennsylvania law generally disallows for the award of attorneys' fees unless there is express statutory authorization, a clear agreement between the parties, or some other established exception. Mosaica Academy Charter School v. Com. Dept. of Educ., 813 A.2d 813, 822-23 (2002) (citing Lavelle v. Koch, 617 A.2d 319, 323 (1992)). As such, the burden of proving a clear agreement between the parties falls to Waymart as the moving party to show an entitlement to attorneys' fees.

Panther Mountain initiated this action in March 2008 claiming breaches of the easement agreement – not the option agreement – which was entered into on May 23, 2003. The easement agreement and the fee agreement entered into on or about October 28, 2004, do not contain provisions allowing for recovery or shifting of attorneys' fees. As noted by Defendant in its brief, the fee and easement agreements contain integration clauses providing that the easement agreement, together with the fee agreement, constitutes the entire agreement between the parties regarding the

current subject matter. (Def. Brief in Supp. of Mot. for Summ. J. at 7). As such, reading an attorneys' fees provision into the easement and fee agreements by referencing the option agreement would cut against the plain language of the easement and fee agreements. In the absence of a clear fee shifting agreement, the common law default applies and each party is responsible for their own attorneys' fees.

Waymart has not identified any facts, authority, or rationale for why the present action, which was brought under the easement agreement and not the option agreement, should be subject to the option agreement's attorneys' fees provision. Waymart merely alludes to an entitlement to attorneys' fees in one paragraph of its brief.[3] (Def. Brief in Supp. of Mot. for Summ. J. at 20). Upon consideration, we find that Waymart has not met its burden of proof showing an entitlement to attorneys' fees. Based on Waymart's failure to show a clear fee shifting agreement between the parties that applies in this case, we recommend that the Court deny Defendant's motion with regard to its claim for attorneys' fees.

---

[3] Plaintiff, in its response brief, offers no serious challenge to Defendant's claim for attorney's fees stating merely that Waymart is not entitled to attorneys' fees because the case has not yet been decided favorably for Waymart. (Pl. Br. In Opp'n to Def. Mot. For Summ. J. at 3).

## VI. RECOMMENDATION

For the reasons set forth above, it is RECOMMENDED that Waymart's motion for summary judgment (Doc. 56) be GRANTED with respect to Panther Mountain's contract claims and DENIED with respect to Waymart's counterclaim for attorney's fees.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of June, 2010.

    *S/Martin C. Carlson*
    **United States Magistrate Judge**